# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

PLUMP ENGINEERING, INC.,

                                      Plaintiff,              1:18-cv-00027 (BKS/DJS)

v.

WESTSHORE DESIGN ENGINEERS, P.C.;
NICOLAS NITTI; RYAN EAGLES; PIOTR SAWRAS
a/k/a PETER SAWRAS; and JOHN EIBERT,

                                      Defendants.

---

**APPEARANCES:**

*For Plaintiff:*
Nicholas Mesiti
Brett M. Hutton
Heslin Rothenberg Farley & Mesiti, P.C.
5 Columbia Circle
Albany, NY 12203

*For Defendants:*
Ronald G. Dunn
Danielle L. Pennetta
Richard C. Reilly
Gleason, Dunn, Walsh & O'Shea
40 Beaver Street
Albany, NY 12207

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff Plump Engineering, Inc. ("PEI") brings this action against Defendants Westshore Design Engineers, P.C. ("WDE"), Nicolas Nitti, Ryan Eagles, Piotr "Peter" Sawras, and John Eibert (the "Individual Defendants"), asserting claims for: breach of contract (Claim One) and breach of duty of loyalty (Claim Three) against the Individual Defendants; breach of

contract (Claim Two) against Defendants Sawras and Eibert; interference with prospective advantage and/or contractual interference (Claim Five) against WDE only; and misappropriation of trade secrets and/or intellectual property (Claim Four) and unfair competition (Claim Six) against all Defendants. (Dkt. No. 1, at 8–14). PEI seeks relief in the form of compensatory and punitive damages, an accounting and disgorgement of Defendants' "ill-gotten gains," specific performance of the agreements between the parties, and a permanent injunction precluding Defendants "from committing further" or "benefitting in any way from" the causes of action alleged, as well as fees, costs, and disbursements. (*Id.* at 14–15).

Defendants now move to: compel arbitration of Plaintiff's claims, to the extent they are arbitrable, against the Individual Defendants under section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16; stay any non-arbitrable claims and all claims against WDE under section 3 of the FAA; and to dismiss Plaintiff's claims against the Individual Defendants under Federal Rules of Civil Procedure 12(b)(1), (3), and (6). (Dkt. No. 17). Plaintiff opposes the motion. (Dkt. No. 18). For the reasons that follow, Defendants' motion is granted in part and denied in part.

## II. BACKGROUND[1]

### A. Individual Defendants' Employment at PEI

PEI is a design engineering firm with its primary place of business in Anaheim, California that provides architectural, engineering, and land surveying services. (Dkt. No. 1, ¶¶ 1, 9). In August 2010, PEI hired Defendant Nitti as an engineer in its Anaheim office. (*Id.*

---

[1] In deciding a motion to compel arbitration, courts apply a "standard similar to that applicable for a motion for summary judgment," *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003), which requires consideration of extraneous materials, including "all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002) (internal quotation marks omitted). Accordingly, only those facts relevant to deciding the motion at issue are set out below, and are drawn from the pleadings, affidavits, and exhibits attached thereto, to the extent that they would be admissible as evidence.

2

¶ 12). In 2012, Nitti informed PEI that he "wished to relocate and return" to Albany, New York. (*Id.* ¶ 13). PEI agreed to "establish an office and staff in Albany, and that Nitti would be employed by PEI in its new Albany office." (*Id.*). PEI also hired Defendants Sawras, Eagles, and Eibert as employees in Albany. (*Id.* ¶ 15). During their employment, the Individual Defendants "benefitted from the resources provided by PEI" and "had access to PEI's documents and computer records." (*Id.* ¶ 16). PEI alleges that, while they were employees of PEI, the Individual Defendants "accessed PEI's Intellectual Property and copied and transferred electronic files containing such Intellectual Property to unauthorized external" devices and a DropBox account. (*Id.* ¶ 30).

In 2015, each of the Individual Defendants signed a document titled "Receipt of Employee Handbook," which stated that the employee "agreed to read and abide by the policies in the PEI Employee Handbook." (*Id.* ¶¶ 18–21). The PEI Employee Handbook required, *inter alia*, that PEI's proprietary and confidential information would not be used and disclosed to third parties, that such information would not be used in a manner that was detrimental to PEI's best interests, and that PEI's property was to be returned upon termination of employment. (*Id.* ¶ 22). Defendants Sawras and Eibert also signed additional "Employee Confidentiality and Non-Solicitation" agreements. (*Id.* ¶¶ 19–20).

### B. The Arbitration Agreement

At the start of their employment, each of the Individual Defendants also signed a document titled "Agreement to Arbitrate Claims" ("Arbitration Agreement"). (Dkt. Nos. 17-7 (Nitti), 17-9 (Eagles), 17-11 (Eibert), 17-13 (Sawras)). The Arbitration Agreement states that the FAA "governs interpretation and enforcement of this Agreement to the maximum extent permitted by law, and this Agreement is to be construed as broadly as possible." (*See, e.g.*, Dkt. No. 17-7, at 1). It requires that "a court, not an arbitrator," settle any disputes regarding the

"enforceability and validity" of the Agreement. (*Id.*). The Agreement further provides that PEI and the Individual Defendants agree to arbitrate "all disputes, claims or controversies of any kind between them, including but not limited to all disputes arising out of Employee's employment with Employer and/or termination of employment, to the fullest extent allowed by law, except as provided under Section 4 of this Agreement." (*Id.*). The scope of the Agreement includes but is not limited to claims, "whether brought by Employer or Employee," for "breach of any contract or covenant (express or implied)," "tort claims," "misappropriation of property, trade secrets, and/or confidential information," "breach of the duty of loyalty," "interference with contract," "unfair competition," "any claim for alleged wrongful conduct by Employee of any kind," and "claims for violation of any federal, state, local, or other law." (*Id.*). The Arbitration Agreement states that the neutral arbitrator selected by the parties "shall have full authority to award all relief available in a court of law, including but not limited to compensatory and punitive damages, reinstatement, costs, and attorneys' fees provided by contract or statute." (*Id.* at 2).

Section 4 of the Arbitration Agreement contains exceptions to the claims that are subject to arbitration, and specifies that the "Agreement does not cover . . . claims brought by either party for injunctive relief" and that any such claims "may be presented in the appropriate forum." (*Id.* at 1). The Arbitration Agreement further provides that, "[i]n addition," "either party may apply to a court for any provisional remedy, including a temporary restraining order or preliminary injunction." (*Id.*).

### C. Defendant Nitti's Resignation and Release Agreement

On August 3, 2016, Nitti informed PEI that he intended to resign effective September 2, 2016 to establish his own engineering firm in Albany. (Dkt. No. 17-6, ¶ 6). PEI preemptively terminated Nitti's employment on August 9, 2016, and Nitti signed a "Final Exit Interview and Release Agreement" ("Release") on that same day. (*Id.* ¶ 7). The Release states that that Nitti

4

"releases and forever discharges [Plaintiff] . . . from all claims . . . which Employee has, or has ever had, or may in the future have against Employer, . . . in any manner related to Employee's employment with the Employer." (Dkt. No. 1-7, at 2). The Release required Nitti to maintain confidentiality and to return all documents containing trade secrets to PEI. (Dkt. No. 1-7, at 2). It further provides that "[t]his Agreement constitutes the entire agreement between Employee and Employer with respect to its subject matter and supersedes all prior agreements." (*Id.* at 3). Nitti was the only employee of the Individual Defendants who signed such a Release.

### D. WDE's Founding

After leaving PEI in August 2015, Nitti "began operating as a sole proprietor out of [his] own home" and "worked on forming [his] own engineering firm." (Dkt. No. 17-6, ¶ 8). Defendants Sawras, Eagles, and Eibert resigned from PEI shortly thereafter and began working with Nitti. (Dkt. No. 17-6, ¶ 10). Nitti incorporated WDE on October 7, 2016 and WDE "began operating in January 2017, with its principal place of business in Albany, New York." (*Id.* ¶ 9). Defendants Sawras, Eagles, and Eibert continued working with Nitti as employees of WDE. (Dkt. No. 1, ¶ 26). The Complaint alleges that, since leaving PEI, Defendants "have used [PEI's] Intellectual Property for the benefit of themselves and WDE's business and remain in possession of the same" in violation of the agreements described above. (*Id.* ¶ 30). The Complaint further alleges, *inter alia*, that Defendants "have used PEI's Intellectual Property . . . as the basis for obtaining financial and other benefits including jobs and work from clients . . . and potential clients of PEI." (*Id.* ¶ 35).

### E. Initiation of Arbitration Proceedings

In March 2017, PEI initiated arbitration proceedings "based on identical arbitration agreements executed individually by the" Individual Defendants. (Dkt. No. 17-2, at 7). In its demand for arbitration, PEI asserted claims similar to those alleged in this action, including

5

breach of duty of loyalty and good faith, breach of fiduciary duty, misappropriation of trade secrets, and breach of "obligations under the Plump Employee Handbook." (*Id.* at 8–13). PEI's demand for arbitration sought monetary damages and injunctive relief, as well as costs, disbursements, and attorneys' fees. (*Id.* at 13). Before the parties proposed or selected an arbitrator, however, PEI withdrew its demand for arbitration on December 21, 2017 and filed the instant action for the purpose of pursuing its "claim for monetary damages against WDE and Defendant Nitti, as well as injunctive relief against all the Defendants." (Dkt. No. 18, at 12).

## III. APPLICABLE STANDARDS

The Federal Arbitration Act "is an expression of 'a strong federal policy favoring arbitration as an alternative means of dispute resolution.'" *Ross v. Am. Exp. Co.*, 547 F.3d 137, 142 (2d Cir. 2008) (quoting *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001)). To that end, section 4 of the FAA allows a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition to any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such an agreement." 9 U.S.C. § 4. In deciding a motion to compel under section 4 of the FAA, courts apply a "standard similar to that applicable for a motion for summary judgment." *Bensadoun*, 316 F.3d at 175. "Accordingly, the Court must grant a motion to compel arbitration if the pleadings, discovery materials, and any affidavits show that there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law." *Ryan v. JPMorgan Chase & Co.*, 924 F. Supp. 2d 559, 562 (S.D.N.Y. 2013). Where such a showing is made, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). "In deciding

whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 649 (1986). The Supreme Court has instructed that district courts must "compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *Dean Witter Reynolds, Inc.*, 470 U.S. at 217.

Arbitration, however, "is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). "Where the parties to an arbitration agreement *specifically have excepted a certain type of claim* from mandatory arbitration, it is the duty of courts to enforce not only the full breadth of the arbitration clause, but its limitations as well." *Hartford Acc. & Indem. Co.*, 246 F.3d at 226. "[T]he 'party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid.'" *Kutluca v. PQ N.Y. Inc.*, 266 F. Supp. 3d 691, 700 (S.D.N.Y. 2017) (quoting *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010)). Finally, if it is "satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding," a district court must then stay such proceedings under section 3 of the FAA. *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997).

In interpreting a validly formed arbitration agreement, the court applies "a 'presumption of arbitrability' if the 'arbitration agreement is ambiguous about whether it covers the dispute at hand.'" *Lloyd v. J.P. Morgan Chase & Co.*, 791 F.3d 265, 269 (2d Cir. 2015) (quoting *Granite Rock Co. v. Int'l Bhd. Of Teamsters*, 561 U.S. 287, 301 (2010)). The "presumption may tip the scale if an agreement is truly ambiguous . . . but it does not alter the controlling question: is the

7

arbitration agreement best construed to encompass the dispute?" *Id.* (citation and internal quotation marks omitted). As in any other case involving the interpretation of a contract, "'the parties' intentions control.'" *Id.* (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010)).

## IV. DISCUSSION

Defendants move to compel arbitration and dismiss PEI's claims against the Individual Defendants under section 4 of the FAA on the basis that "the Arbitration Agreements . . . are valid" and "Plaintiff's claims alleged against them are within the scope of claims covered by these Arbitration Agreements." (Dkt. No. 17-14, at 18). Defendants further argue that section 3 of the FAA requires that all of PEI's claims against WDE, as well as the balance of any other non-arbitrable claims remaining, must be stayed pending the conclusion of arbitration. (*Id.* at 21–22). PEI opposes Defendants' motion, asserting that: (i) PEI's "claims for injunctive relief fall entirely and explicitly within the carve-out section of the Arbitration Agreement"; (ii) Defendant Nitti "waived any right to arbitrate claims related to his conduct" by signing the Release; and (iii) because arbitration of PEI's claims against WDE and for injunctive relief against all Defendants cannot be compelled, "judicial economy" would not be served by a stay. (Dkt. No. 18, at 12–18).

### A. Arbitrability of Claims Against the Individual Defendants

When deciding whether a dispute is arbitrable, courts consider two factors: "(1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement encompasses the claims at issue." *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015). The parties do not dispute that they agreed to arbitrate, as they acknowledge that they mutually executed the Arbitration Agreements at issue "at the commencement of [the Individual Defendants'] respective employment." (Dkt. No. 18, at 9). The parties do not agree, however,

8

on whether PEI's claims for permanent injunctive relief remove the underlying claims from the scope of the arbitration agreement.

As noted above, the description of "claims covered" in section 3 of the Arbitration Agreement broadly includes "all disputes . . . to the fullest extent allowed by law," except as provided under section 4. (Dkt. No. 17-7). Each of the substantive claims asserted in this action are specifically listed in section 3 as claims covered. On the other hand, section 4, which identifies the "claims not covered," includes "claims brought by either party for injunctive relief."[2] (*Id.*). The Complaint seeks, in connection with the first five causes of action alleged, "an order entering appropriate relief, including but not limited to an order awarding PEI damages in an amount to be determined by the Court." (Dkt. No. 1, ¶¶ 44, 51, 56, 63, 69). For its sixth cause of action for unfair competition against all Defendants, PEI requests relief in the form of "compensatory damages, the disgorgement of Defendants' ill-gotten gains, and an award of punitive damages." (*Id.*). Finally, the Complaint concludes:

> WHEREFORE, Plaintiff demands judgment as against the Defendants, including the following relief:
>
> . . .
>
> (f) an injunction precluding the Defendants from committing further or additional breaches of its agreements with, and duties to, PEI and specifically precluding the Defendants from misappropriating or otherwise using intellectual property;
>
> (g) an injunction preventing the Defendants from benefitting in any way from its breach of their agreements with PEI, misappropriation of confidential information, trade secrets, and other intellectual property;

(Dkt. No. 1, at 14). The Complaint therefore asserts substantive claims that are explicitly encompassed under section 3 of the arbitration agreement, while also claiming injunctive relief

---

[2] Section 4 further provides that "either party may apply to a court for . . . a temporary restraining order or preliminary injunction." (Dkt. No. 17-7).

that is expressly excluded from arbitration under section 4.[3] PEI apparently contends that it cannot be compelled to arbitrate any of the claims asserted because, in addition to the other forms of relief sought, it has demanded a permanent injunction.[4] Defendants, on the other hand, contend that "[r]egardless of the existence of any request for 'an injunction' in the . . . Complaint, Plaintiff's underlying claims for breach of contract, misappropriation, etc. are clearly to be arbitrated." (Dkt. No. 21, at 8).[5]

The only case PEI cites in support of its position is *Major, Lindsey & Africa, LLC v. Mahn*, No. 10-cv-4329, 2010 WL 3959609, at *3, 2010 U.S. Dist. LEXIS 94033 (S.D.N.Y. Sept. 7, 2010) ("*MLA*"). There, however, the arbitration agreement at issue distinguished claims for injunctive relief from claims for monetary damages. The agreement excluded "[c]laims . . . seeking injunctive or declaratory relief with respect to any confidentiality, return of property, non-solicitation, non-compete, or nondisparagement covenants," 2010 WL 3959609, at *6, but expressly provided that "all other aspects of such claims, including any claims for damages, are covered by this [a]greement" and were therefore subject to arbitration. *Id.* at *3. After MLA sued, Mahn moved to dismiss and/or stay the claims against her in favor of the arbitration

---

[3] The resolution of the issue of arbitrability is for the Court. As noted *supra* Section II.B., the Agreement explicitly states that the "its applicability to a certain controversy . . . [is] to be decided by a court, not an arbitrator." (Dkt. No. 17-7, at 1).

[4] PEI's asserts that it "is seeking injunctive relief for all of its claims against [all of] the Individual Defendants and monetary damages against Individual Defendant Nitti." (Dkt. No. 18, at 12). The Complaint, however, plainly states that PEI seeks relief in the form of monetary damages for each of its substantive claims and does not differentiate between the types of relief sought from each of the Individual Defendants. (*See, e.g.*, Dkt. No. 1, ¶¶ 44, 56, 63, 73). Indeed, PEI's second breach of contract claim—requesting "an order awarding PEI damages in an amount to be determined by the Court"—is against Defendants Sawras and Eibert alone. (*Id.* at ¶ 51). Despite PEI's efforts to now recharacterize the nature of the relief it seeks against Sawras, Eibert, and Eagles as injunctive only, "it is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss." *O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989).

[5] The Arbitration Agreement excludes claims for injunctive relief, and PEI's Complaint seeks injunctive relief. Despite Defendants' argument to the contrary, neither PEI's failure to move for a preliminary injunction nor its requests for "an injunction" within its prayer for relief alone are material to divining the form of relief Plaintiff seeks. *See, e.g.*, *Pace v. Schwartz*, 680 F. Supp. 2d 591, 594 (S.D.N.Y. 2010) (noting that an "injunction is a remedy and not a separate cause of action," and that "the fact that plaintiffs have pleaded their request for injunctive relief as a separate claim rather than as part of the prayer for relief in no way disentitles them to seek injunctive relief").

proceedings already underway. *Id.* The court denied Mahn's motion, relying primarily on language in the parties' agreement that "specifically contemplate[d] that damages claims relating to the same subject matter will have to be arbitrated, notwithstanding the obvious duplication of effort that would entail." *Id.* at *4. The court, noting that the parties' "agreement to this unusual procedure" did not "divest [the] Court of the ability to control its own docket," declined to stay MLA's non-arbitrable claims pending the completion of arbitration of its claims for damages and, upon considering the merits of the substantive claim underlying MLA's claim for injunctive relief, dismissed the claim. *Id.* Despite PEI's contention to the contrary, *MLA* offers no support for the argument that the Individual Defendant's motion to compel arbitration must be denied in its entirety.

The Court notes that the language of the arbitration agreement excludes "*claims*" for injunctive relief and not "*actions* seeking injunctive relief." In *Frydman v. Diamond*, the court considered an agreement that permitted any "party initiating an action seeking injunctive or equitable relief" to "bring such action in a court," and required that neither party "seek to dismiss or move such action to arbitration." No. 14-cv-8741, 2015 WL 5294790, at *5, 2015 U.S. Dist. LEXIS 120774, at *6 (S.D.N.Y. Sept. 10, 2015). The court declined to compel arbitration of the plaintiff's claims for either monetary or injunctive relief, citing to the "plain language" of the exclusion provision which did not "apply only to *claims* for equitable relief, but to any *action* seeking equitable relief." *Id.* at *8. The court therefore concluded that the exclusionary provision "encompass[ed] the entirety of this action . . . not merely claims for equitable relief arising under this action." *Id.* at *8; *see also Archer & White Sales, Inc. v. Henry Schein, Inc.*, 878 F.3d 488 (5th Cir. 2017) ("The arbitration clause creates a carve-out for 'actions seeking injunctive relief.' It does not limit the exclusion to 'actions seeking *only* injunctive relief,' nor

11

'actions for injunction in aid of an arbitrator's award.' Nor does it limit itself to only *claims* for injunctive relief."), *cert. granted*, No. 17-1272, 2018 WL 1280843, 2018 U.S. LEXIS 3879 (U.S. June 25, 2018).

While a "claim" for injunctive relief could be interpreted to preclude litigation of any *action* in which injunctive relief is requested, the court notes that an injunction is a remedy and not a cause of action. *See Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406 (S.D.N.Y. 2010). And, while the Arbitration Agreement excludes "claims for injunctive relief," it does not altogether exclude "actions" or "disputes" asserting claims for injunctive relief. Further, it explicitly *includes* each of the substantive claims underlying PEI's request for injunctive relief. The Court has not found any authority addressing language similar to the arbitration clause in this case that would support the proposition that a claim for injunctive relief renders unarbitrable all other claims for non-injunctive relief. Construing the Agreement "as broadly as possible," (Dkt. No. 17-7), in accord with the parties' intent, and considering its very broad and inclusive language requiring the parties to arbitrate "all disputes . . . of any kind between them . . . to the fullest extent allowed by law," (Dkt. No. 17-7), as well as the presumption in favor of arbitration, *Lloyd*, 791 F.3d at 269, the Court finds that PEI's substantive claims must be arbitrated, and that the remedy of injunctive relief is not subject to arbitration.[6] Accordingly, PEI's claims for injunctive relief against the Individual Defendants are stayed, the merits of PEI's substantive

---

[6] There is caselaw support for separating claims by the form of relief sought and compelling arbitration of claims for monetary damages while requiring litigation of claims for injunctive relief. *See, e.g.*, *Johnson Controls, Inc. v. Guilford Mills, Inc.*, No. 05-cv-71302, 2005 WL 81559, at *4 (E.D. Mich. July 19, 2005) (staying the plaintiff's claims for injunctive relief while compelling arbitration of substantive claims) (Lexis citation unavailable); *U-Haul Int'l, Inc. v. Hire a Helper, LLC*, No. 08-cv-01801, 2009 WL 10671527, at *3, 2009 U.S. Dist. LEXIS 139862, at *11 (S.D. Cal. Apr. 13, 2009) (concluding that "the arbitration clause exempts certain categories of relief an arbitrator may award, but does not exclude entire disputes from arbitration merely because a party seeks that category of relief").

claims against the Individual Defendants must be arbitrated, and the arbitrator may award whatever non-injunctive relief, if any, he or she sees fit.

### B. Defendant Nitti's Release Agreement

In addition to PEI's argument that none of its claims are arbitrable due to its request for a permanent injunction, PEI argues that Defendant Nitti "waived any right to arbitrate claims . . . by mutually agreeing to and executing the Final Exit Interview and Release Agreement." (Dkt. No. 18, at 14). The Release indicates, however, that it is applicable only "with respect to its subject matter." (Dkt. No. 1-7, at 3). The "subject matter" of the Release concerns confidentiality, non-disparagement, and waiver of all claims by Nitti against PEI—it makes no mention of arbitration. (*Id.*). "Absent an explicit intent to rescind" an agreement to arbitrate, such an agreement "remain[s] valid and enforceable" even upon termination of the contract in which the arbitration provision is contained. *Cont'l Ins. Co. v. Allianz Ins. Co.*, 52 F. App'x 557, 558–59 (2d Cir. 2002) (holding that the district court properly compelled arbitration where "prototypical broad arbitration provision" at issue and release contained no "express rescission of the arbitration provision"). Furthermore, to the extent the Release may be construed as a waiver of Nitti's right to arbitrate his claims against PEI—which the Court declines to determine here— no such claims are at issue in this case, which involves PEI's claims against Nitti, among others. PEI has not pointed to any language in the Release waiving PEI's claims against Nitti—much less Nitti's right to arbitrate PEI's claims against him.

### C. Whether to Stay Pending Litigation

Finally, because the Court is "satisfied that the parties have agreed in writing to arbitrate [the] issues underlying the district court proceeding" with regard to PEI's claims for non-injunctive relief against the Individual Defendants, *McMahan Securities Co. L.P. v. Forum*

*Capital Markets L.P.*, 35 F.3d 82, 85 (2d Cir. 1994), section 3 of the FAA requires that this Court "shall" stay further litigation of those claims pending arbitration, 9 U.S.C. § 3.

Defendants have not moved to compel arbitration of PEI's claims against nonsignatory WDE. The arbitrability of PEI's claims against the Individual Defendants "ordinarily . . . cannot justify a stay under § 3 of the FAA as to someone who was not a party to the contract." *WorldCrisa Corp.*, 129 F.3d at 75. "[D]espite the inapplicability of the FAA" to PEI's claims against WDE, however, this Court "may stay a case pursuant to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Id.* at 76 (internal quotation marks omitted). Indeed, the Supreme Court has indicated that, "[i]n some cases . . . it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 n.23 (1983). "The Court must consider factors such as the desirability of avoiding piecemeal litigation and the degree to which the cases necessitate duplication of discovery or issue resolution." *Maritima de Ecologia, S.A. de C.V. v. Sealion Shipping Ltd.*, No. 10-cv-8134, 2011 WL 1465744, at *5, 2011 U.S. Dist. LEXIS 41148, at *16 (S.D.N.Y. Apr. 15, 2011). "A discretionary stay is particularly appropriate where there is significant factual overlap between the remaining claims and the arbitrated claims." *Winter Inv'rs, LLC v. Panzer*, No. 14-cv-6852, 2015 WL 5052563, at *11, 2015 U.S. Dist. LEXIS 113901, at *33 (S.D.N.Y. Aug. 27, 2015). "In such cases, a stay is warranted in part because the prior litigation or arbitration is likely to have preclusive effect over some or all of the claims not subject to arbitration," *id.* at *11, because it is "settled law that the doctrine of issue preclusion is applicable to issues resolved by an earlier arbitration," *CBF Industria de Gusa S/A v. AMCI*

*Holdings, Inc.*, 850 F.3d 58, 77 (2d Cir. 2017) (quoting *Khandhar v. Elfenbein*, 943 F.2d 244, 247 (2d Cir. 1991)), *cert. denied*, 138 S. Ct. 557 (2017).

Here, even if section 3 of the FAA does not mandate a stay, a discretionary stay is warranted because there is significant factual overlap between PEI's claims against the Individual Defendants and WDE. Specifically, PEI asserts three claims against WDE: "misappropriation of trade secrets and/or intellectual property," "interference with prospective advantage and/or contractual relations," and "unfair competition." (Dkt. No. 1, at 11–14). PEI's claims for misappropriation of trade secrets and unfair competition are also made against all of the Individual Defendants, the factual circumstances surrounding which will be, as described above, explored in arbitration. PEI's claim for interference with prospective advantage is against WDE only, but the factual allegations underlying the claim concern actions undertaken by the Individual Defendants themselves, and Defendant Nitti in particular. The focus of these claims is whether WDE, by virtue of the conduct of the Individual Defendants, wrongfully misappropriated and misused PEI's confidential information and trade secrets. Evaluation of such claims necessarily requires inquiry into whether the Individual Defendants did, in fact, misappropriate and misuse such information and would be entirely duplicative of the issues to be determined in arbitration. Accordingly, in light of the significant factual overlap between the arbitrable claims and those asserted against WDE, the Court finds it appropriate to stay all proceedings in this action pending the outcome of arbitration.

## V. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion to dismiss Plaintiff's claims against the Individual Defendants, compel arbitration of all arbitrable claims, and stay further litigation pending arbitration (Dkt. No. 17) is **GRANTED in part** to the extent that (1) the parties are directed to

proceed to arbitration of PEI's claims for non-injunctive relief against the Individual Defendants in accordance with the terms of the Arbitration Agreement; and (2) further litigation of PEI's remaining claims is stayed pending the completion of arbitration, but is otherwise **DENIED**.

**IT IS SO ORDERED.**

Dated: August 6, 2018
       Syracuse, New York

Brenda K. Sannes
U.S. District Judge